UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA : | | Criminal No. 3:06CR158(SRU) |
| : | | |
| v. : | | |
| : | | |
| : | | November 8, 2006 |
| STANLEY SHENKER : | | |
| : | | |
| : | | |

**THE UNITED STATES' OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH FIVE OF THE SUPERSEDING INDICTMENT**

The defendant raises four arguments to dismiss the five-count Superseding Indictment charging the defendant with conspiracy (Count One); interstate transportation of money obtained by fraud (Counts Two through Four); and mail fraud (Count Five): 1) the counts are barred by the five year statute of limitations; 2) Counts One and Five fail to state an offense; 3) Counts One and Five fail to state an offense (same argument, different language); and 4) Count One is duplicitous for purportedly alleging two separate conspiracies. Each of the arguments lacks any merit.

Indeed, the defendant's statute of limitations arguments are, in fact, remarkable in light of the tolling agreements signed by both defendant's counsel and the defendant, which will be discussed below. Because the defendant's arguments are best addressed in a different order, the Government will respond to argument (4), and then arguments (2), (3) and (1). The Government requests that the Court set this matter for oral argument as soon as reasonably possible to address this motion so that the parties may prepare for the January 23, 2007 trial.

### I. Factual Background

This is a straight-forward kickback case, where the defendant was referred licensing contracts from an insider (James K. Bell)[1] at World Wrestling Entertainment, Inc. ("WWE") to which Shenker was not entitled and then kicked back monies to Bell for sending him the contracts. In total, Shenker paid Bell almost $1 million in kickbacks and in return received money and other benefits as a licensing agent of WWE. Neither Bell nor the defendant disclosed to WWE that Bell was being paid under-the-table for referring licensing contracts to the defendant, enabling the defendant to receive commissions as the purported originator of the contracts. WWE continued to pay these licensing commissions to Shenker after Bell left employment at WWE; Shenker thereafter continued to kick back monies to Bell; and the two took affirmative steps to conceal their ongoing arrangement through March 2002 and beyond, including lying in civil litigation to cover up the kickbacks and falsifying documents produced in discovery in that litigation.

The evidence at trial will be that defendant Shenker was not entitled to certain commissions paid to him by WWE and that Bell would have structured the deals differently without their kickback arrangement. There will be evidence that the coconspirators used wires and the interstate transportation of kickback payments during the course of their scheme. In fact, even assuming *arguendo* WWE was not harmed economically from the secret kickback arrangement (a point the Government obviously contests), Bell and Shenker still fraudulently denied the WWE of Bell's honest services by failing to disclose the kickback arrangement.

---

[1] Bell entered a guilty plea to a one count Information charging mail fraud and is awaiting sentencing. See United States v. James Bell, 3:05-CR:00029 (SRU).

## II. Relevant Procedural Background

The Government, through a previous AUSA, was initially prepared to present evidence to a grand jury in Bridgeport in this case and seek an indictment in the Summer of 2004.  At that time, Shenker's counsel wished an opportunity to engage in further discussion with that AUSA, and defendant agreed to toll the statute of limitations.  Subsequently, the defendant and that AUSA entered additional tolling agreements.  See Attachment A (all tolling agreements).

In November 2004, one of the undersigned AUSAs picked up the case after the previous AUSA was appointed to  the state-court bench.   Shenker's counsel, having worked frequently with the undersigned AUSA on other cases, discussed the case with the AUSA and strongly requested that the Government take its time to fully consider the matter, review the available evidence and meet with his client before considering an indictment.  Given the open-ended nature of the defendant's request and to avoid the need for multiple tolling agreements, the Government discussed the tolling issue with defense counsel and forwarded the last tolling agreement, which would extend the tolling period from August 3, 2004 until, as relevant here, the date the waiver was revoked in writing.

The short waiver/tolling agreement makes clear:

> [I]t is Mr. Shenker's desire to exclude the period of time from August 3, 2004, through January 31, 2005, **or the date ten days after the date this waiver is revoked in writing by Mr. Shenker, whichever is later** from any period used to calculate the applicable statute of limitations . . .

See November 29, 2004 Tolling Agreement (Exhibit A).   The Agreement continues with great specificity to define the written revocation procedure:

> Written revocation will be accomplished by sending FedEx and facsimile to the below-signed counsel at the United States Attorney's Office for the District of Connecticut

3

>giving notice of the revocation of this waiver/tolling agreement.  Mr. Shenker, through his counsel, further agrees to attempt to have his counsel contact the below-signed Assistant United States Attorney orally of the intention to revoke this waiver/tolling agreement prior to or at the time the revocation is sent.

Id.  The ten-day period after waiver noted in the Agreement would give the Government sufficient time to present the matter to a grand jury if the defendant sought to exercise his right to revoke. The defendant and his counsel signed the agreement on or about November 29, 2004 and returned the agreement to the undersigned AUSA.   In fact, defense counsel in the agreement attested that he had "thoroughly read, reviewed and explained this tolling agreement to my client who advises me that he understands and accepts its terms." Id.

Subsequently, on or about April 7, 2005, and consistent with defense counsel's request for the Government to reconsider the case, defense counsel made his client available for a proffer to explain the defendant's version of events.   Thereafter the Government remained in contact with defendant's counsel and spent considerable time reviewing the underlying facts, relevant documents, depositions and other evidence -- a review which ultimately resulted in the undersigned AUSA concluding that, far from innocent, the defendant had lied repeatedly to the Government and FBI in the April 2005 proffer.  Despite continued contact with the defendant's counsel on this and other cases, defense counsel has yet to provide the Government with written notice of revoking the November 29, 2004 tolling agreement, nor mentioned to the Government any intention to revoke the existing tolling agreement and restart the limitations clock.  Far from seeking to speed up any prosecution, defense counsel has advocated delays in light of two pending lawsuits where the defendant is facing huge civil exposure for the conduct at issue in the

criminal case and the injury he caused the WWE.[2]

On June 6, 2006, a Bridgeport grand jury returned a four-count Indictment against defendant Shenker.[3] On September 7, 2006, the grand jury returned a Superseding Indictment, which added a fifth count against the defendant, but made no changes to the prior four counts. Count One charged Shenker with conspiring with James Bell, a WWE employee, to commit interstate transportation of money obtained by fraud contrary to 18 U.S.C. § 2314 and wire fraud contrary to 18 U.S.C. §§ 1341 and 1346. Counts Two through Four charged Shenker with three counts of interstate transportation of money obtained by fraud in violation of 18 U.S.C. §§ 2314 and 2. Count Five charged Shenker with one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.

### III. THE DEFENDANT'S ARGUMENTS LACK ANY MERIT.

#### A. COUNT ONE IS NOT DUPLICITOUS FOR ALLEGING A MULTI-OBJECT CONSPIRACY

The Government addresses first the fourth argument raised by the defendant in his motion to dismiss. Shenker contends that Count One, the conspiracy count, alleges two offenses in a single count. Def. Mem. at 8-9. He seeks a dismissal of this count by claiming that the count is duplicitous. Id. Quite simply, Count One alleges only one offense -- *a five year conspiracy in*

---

[2] The Government will consider the defendant's written motion to dismiss to now constitute revocation of the continued tolling arrangement pursuant to the Tolling Agreement, although the revocation fails to follow the format agreed to by the parties.

[3] The date of the original indictment stops the limitations clock as to Counts One through Four of the Superseding Indictment, as those Counts were simply taken verbatim from the original Indictment. See United States v. Ben Zvi, 242 F.3d 89, 98 (2d Cir. 2001) (substantially identical charges in superseding indictment related back to date of original indictment for limitations purposes).

*violation of 18 U.S.C. § 371* -- and thus, it is not duplicitous.  Therefore, Shenker's motion to dismiss the conspiracy count on this basis should be denied.

The Superseding Indictment does allege *multiple objects* of this conspiracy: The first object alleged is that Shenker and Bell conspired to transport, transmit and transfer in interstate commerce, goods and money valued at $5,000 or more knowing the same to have been stolen, converted and taken by fraud contrary to 18 U.S.C. § 2314 (hereafter "interstate fraud"). Additional alleged objects of the conspiracy include that Shenker and Bell agreed to devise a scheme to defraud WWE of (1) money/property and (2) honest services by interstate and foreign wire communications contrary to 18 U.S.C. §§ 1341 and 1346 (hereinafter "traditional wire fraud" and "honest services fraud," respectively).

The defendant ignores that in the Second Circuit, it is well established that "the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the '*(t)he conspiracy* is the crime . . . however diverse its objects.'" United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992) (emphasis added; citations omitted).  As the Supreme Court explained more than 60 years ago, "[w]hether the object of a single agreement is to commit one or more crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes.  The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." Braverman v. United States, 317 U.S. 49, 53 (1942).

Because Count One alleges a multi-object conspiracy with only one penalty, a maximum five year sentence, the count is not duplicitous; it simply means that the scope of the parties' agreement had varied, albeit related, objects.  Nor is there any merit to Shenker's suggestion that

6

the jury may convict him without reaching a unanimous agreement on his guilt with respect to a particular object. Because the jury will be instructed that it can only convict Shenker of conspiracy if they are unanimous that he agreed to one objective of the conspiracy,[4] Shenker's fear is without foundation. See United States v. Salemeh, 152 F.3d 88, 148 (2d Cir. 1998) (affirming conspiracy conviction where "[t]he court's careful jury charge apprized the jury of the essence of the conspiracy's underlying illegal objectives and instructed the jury that [defendant] could be convicted of conspiracy only if he agreed to one or more of the objectives").

None of the cases cited by Shenker in part 4 of his memorandum stand for the proposition that a multi-object conspiracy is duplicitous or that such a charge should be dismissed pretrial. For example, in United States v. Nattier, 127 F.3d 655 (8th Cir. 1997), the court affirmed a conspiracy conviction where the conspiracy alleged two separate objects. There the district court gave a unanimity instruction that required the jury to "unanimously agree upon which of the two offenses was the subject of the conspiracy." Id. at 658. In both United States v. Karam, 37 F.3d 1280, 1286 (8th Cir. 1994)and United States v. Sturdivant, 244 F3d 71, 75 (2d Cir. 2001), the discussions of whether a count was duplicitous did not involve a conspiracy charge.

Shenker's motion to dismiss Count One, the conspiracy count, on grounds that the charge is duplicitous should be denied.

---

[4] Such a charge was given by the Honorable Alvin W. Thompson, U.S.D.J., in United States v. Walter Forbes and E. Kirk Shelton, 3:02CR 264 (AWT):

> The government is not required to prove that there was an agreement to accomplish all four unlawful objectives. However, the government must prove beyond a reasonable doubt that there was an agreement to accomplish at least one of the unlawful objectives charged in Count 1. And you must agree unanimously that it was the same unlawful objective.

### B. THERE IS NO BASIS TO DISMISS COUNTS ONE AND FIVE FOR FAILURE TO ALLEGE OFFENSES, AS THEY PLAINLY DO.

In the second argument enumerated in his Motion, the defendant moves to dismiss Counts One and Five of the Superseding Indictment claiming that these counts fail to state indictable offenses. Def. Mem. at 4-6.[5] This is the gist of his third enumerated argument as well, and so both arguments will be addressed here. The defendant's argument is baseless for a host of reasons.

Rule 7(c), Fed. R. Crim. P. requires only that an indictment set forth "a plain, concise and definite written statement constituting the offense charged." In this Circuit, as in others, it is well-settled that an indictment "need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002) (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (internal quotations omitted));United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999) (Second Circuit has "consistently upheld indictments that do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime"); United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (same); United States v. Santeramo, 45 F.3d 622, 624 (2d Cir. 1995)(indictment was sufficient where it tracked the statutory language). Thus, "'an indictment is sufficient if it, first, contains the elements of the

---

[5] Defendant does not appear to be arguing that, under 18 U.S.C. § 371, Count One fails to state an offense because the United States is not a victim, an argument that has been rejected. See, e.g., United States v. Brandon, 17 F.3d 409, 422 (1st Cir. 1994) ("We therefore reject the contention that the indictment must assert that the United States or one of its agencies was a target of the alleged conspiracy in this case"). Instead he appears to be again focusing on one theory of liability and repackaging his (incorrect) argument that a conspiracy to deprive an employer of honest services cannot exist after the employee terminates employment.

offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" LaSpina, 299 F.3d at 177 (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)); see also Alfonso, 143 F.3d at 776 (same). The charging instrument does not have to set forth evidence negating every defense or explaining how the crime was committed. See, e.g., United States v. Carrier, 672 F.2d 300, 303-04 (2d Cir. 1982).

When assessing a pretrial motion to dismiss, the district court should not look beyond the four corners of the indictment, and the allegations in the indictment must be accepted as true. See Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952); United States v. Mango, 199 F.3d 85, 89 (2d Cir. 1999); United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998) (district court erred when it "looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial"). Indeed, absent a full proffer by the government of its evidence at trial, pretrial inquiry into the sufficiency of the government's anticipated proof at trial is "premature." Alfonso, 143 F.3d at 776; see also United States v. Autorino, 381 F.3d 48, 51-52 (2d Cir. 2004) (reversing district court's dismissal of indictment where the indictment pled the essential elements of the offense).

Count One of the Superseding Indictment alleges a multi-object conspiracy in violation of 18 U.S.C. § 371 between Shenker and Bell between January 1998 and March 2003. Superseding Indictment ¶ 11. Count One describes the conspiracy in great detail including the arrangement between Shenker and Bell whereby Shenker paid approximately $1 million in secret kickbacks to Bell in order to guarantee commissions from WWE and efforts by the conspirators to defraud WWE during civil litigation. Superseding Indictment, ¶¶ 12 - 28.

Count Five of the Superseding Indictment alleges that Shenker engaged in a traditional scheme to defraud WWE of money and property by committing mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  While Count Five incorporates earlier paragraphs in the indictment to give factual background to the charging language, Count Five limits the scheme to defraud to the events surrounding the civil litigation as set forth in paragraphs 21 through 26 of the Superseding Indictment. Id. ¶ 33.   Count Five focuses on Shenker's scheme to defraud WWE of money/property during the ongoing civil action by lying under oath, creating false invoices and causing his civil lawyers to mail these false invoices to WWE's counsel.

The defendant does not claim that either Count One or Five fails to allege the requisite statutory language or the requisite elements.  In fact, both Counts One and Five go far beyond the minimum pleading requirements to state an offense.  The defendant's arguments for dismissal for failure to state a claim should be rejected for this reason alone.  As explained in more detail below, there are additional reasons for rejecting the defendant's arguments.

> **i.)  The Defendant's Focus on Bell's Termination Date and the Honest Services Theory of Liability is Misplaced.**

The defendant focuses much of his motion to dismiss on honest services fraud and the date Bell left the employ of WWE, markedly overstating the importance of this theory of liability and of Bell's date of termination to the overarching conspiracy charged in Count One.[6]

First, as noted above, the defendant is charged with a *multi-object* conspiracy, including

---

[6] The benefit for the Government of the honest services theory of liability is that an employer may be denied honest services, even if the defendant contends that the Government cannot establish WWE suffered injury resulting form the kickbacks.  Whether the Government will seek to pursue this theory of liability will depend in part how evidence comes in at trial.  The Government intends to pursue the theory at this time, but, of course, reserves the right to make strategic changes as the trial proceeds.

the objects of interstate fraud, traditional wire fraud, and honest services fraud.  Even if the defendant could seek to strike Count One's allegations of honest services fraud at this time, the Government need only establish at trial that defendant conspired with Bell to commit *one* of the multiple objects of the conspiracy, including interstate fraud or the traditional wire fraud involving material omissions and misrepresentations to get money or property.  See Griffin v. United States, 502 U.S. 46, 56-57 (1991) (a conviction on a conspiracy count with multiple objects will be sustained even though one object is supported by inadequate evidence).[7]  As to both the objects of interstate fraud or traditional wire fraud,  the Superseding Indictment alleges multiple overt acts that continue long after February 2000, including material *affirmative* misrepresentations during the civil litigation that furthered the continuing conspiracy to defraud the WWE of money and property and to engage in interstate transportation of monies obtained by fraud.  The defendant also continued to make kickback payments until March 2002 that furthered the overarching conspiracy.   Thus, the conspiracy to commit these objects continued irrespective of any honest services theory of liability.[8]  The defendant has not and cannot state

---

[7]  The Superceding Indictment alleges that Shenker and Bell conspired to defraud WWE of money, property **and** honest services.  Indictment, ¶ 11 (emphasis added).  Even if these were the only frauds charged, the United States need only prove that Shenker conspired to defraud WWE of **either** money/property **or** honest services as the mail/wire fraud statutes itself does not require a scheme to defraud the victim of more than one of these items.  Cf. Modern Federal Jury Instructions, Sand, Sieffert, Loughlin, Reiss, Instruction 44-4 ("The first element the government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud (the victim) of money **or** property . . . **or** the intangible right of honest services . . . .) (Emphasis supplied).  Shenker makes no claim that he and Bell could not conspire to engage in a scheme to defraud the WWE of money or property, as opposed to honest services, or that the Indictment fails to allege such a conspiracy.

[8]  The defendant suggests at different points that somehow the interstate transportation object of the conspiracy is time barred, pointing to the particular interstate transportation dates used for the substantive offenses in Counts Two through Four.   Putting aside that the

that these other charged objects of the conspiracy fail to state a claim and for this additional reason the motion to dismiss should be denied.[9]

Second, there is no basis to strike the limited allegations of honest services fraud in Count One. The charged multi-object conspiracy is alleged to have spanned 1998 through March 2003. Superseding Indictment ¶ 11. The defendant does not, and could not, argue that honest services fraud could not as a matter of law be one object of the conspiracy **prior to February 2000.** Because there is no requirement that each criminal object of the conspiracy extend for the entire period of the conspiracy, there is simply no basis for striking the honest services fraud object, even if, for the sake of argument, that object ended in February 2000 with Bell's leaving employment at WWE.

Third, the defendant offers no authority to support his contention that a conspiracy to commit honest services fraud cannot extend in time past the period of employment. Bell and Shenker's fraud on WWE started during Bell's employment, but continued to impact WWE as

---

defendant's signing of the tolling agreements discussed below makes this a non-issue, Count One alleges a number of payments as overt acts that extend far beyond the three dates used in Counts Two through Four. Again, as the statute of limitations analysis is driven by the last alleged overt act in furtherance of the conspiracy, this conspiracy count cannot be dismissed pretrial.

[9] While the defendant could be convicted on Count One even if the Government did not pursue its allegation of honest services wire fraud, the date of Bell's termination has some overlapping relevance to each of the theories of liability as the matter is tried. Each charged object of the conspiracy in Count One – interstate transportation, traditional wire fraud, and honest services fraud – includes a scheme to defraud WWE by material omissions and misrepresentations. Under each of these theories, while an employee of WWE, Bell would have had a fiduciary obligation to disclose his receipt of kickbacks and his failure to do so would constitute a material omission. The Government contends that this duty of loyalty and disclosure continued after he left WWE under terms of his specific severance agreement with WWE, imposing on Bell a continuing duty to disclose, which is a fact issue for the jury to resolve.

the coconspirators continued to earn the spoils of the fraud and continued to perpetuate and conceal the fraud. Where the conspirators expect to receive an economic benefit from the fraud, as Shenker and Bell did here, it is well settled that a conspiracy continues "until the conspirators received their anticipated economic benefit . . . ." United States v. LaSpina, 299 F.3d at 177; United States v. Mennuti, 679 F.2d 1032, 1035 (2d Cir. 1982); accord United States v. Ben Zvi, 242 F.3d at 98; see also United States v. Fletcher, 928 F.2d 495, 500 (2d Cir. 1991); United States v. Knuckles, 581 F.2d 305, 313 (2d Cir. 1978).

Fourth, there is an additional strong factual argument that Shenker's and Bell's conspiracy to deprive WWE of honest service continued beyond February 2000 because Bell's duties of loyalty and disclosure extended beyond that date. Shenker conveniently misreads the Superseding Indictment when he claims that "[a]fter February 2000 there was no employer-employee relationship between Bell and the WWE." Def. Mem. at 5-6. Paragraph 7 of this Indictment expressly provides that "Bell's loyalty to his employer continued after he left WWE under the terms of his February 2000 severance agreement where WWE agreed to continue to compensate him through March 27, 2001, and **he in turn agreed to provide <u>reasonable assistance and cooperation</u> to WWE in activities related to any pending or future lawsuit or claims involving WWE <u>and to cooperate with</u> WWE counsel to assist their efforts.**" (Emphasis added). Significantly, the Superseding Indictment alleges that Shenker and Bell continued their deception and created false new invoices during civil litigation over matters that directly related to the kickbacks.

The jury should be permitted to consider whether Bell owed a continuing duty of disclosure and honest services to WWE during litigation involving Shenker and Bell. Because

the allegations in the Superseding Indictment must be presumed to be true for purposes of ruling on a pretrial motion to dismiss, Shenker cannot have this allegation in Count One dismissed based on his belief that Bell's continuing relationship with WWE did not involve a continuing duty to disclose the kickbacks. United States v. Tocco, 135 F.3d 116, 124 (2d Cir. 1998) (whether wire fraud scheme continued based on fact specific inquiry). A challenge to the factual sufficiency of a wire fraud charge is properly brought only after the Government has closed its case, as a motion for judgment of acquittal under Rule 29, not before trial has begun. See, e.g., United States v. Ganim, 225 F. Supp. 2d 145, 160 (D. Conn. 2002) (concluding that a "pretrial motion to dismiss is not the proper vehicle for testing the Government's proof" on whether a mailing was in furtherance of the scheme alleged in the indictment).

 Shenker's reliance on United States v. Rybicki, 354 F. 3d 124 (2d Cir. 2003), and United States v. Handakas, 286 F.3d 92 (2d Cir. 2002), and its discussion of who owes a duty of honest services, is misplaced and has no significance in a motion to dismiss. Neither of those cases involved a pretrial dismissal of a conspiracy count. Moreover, neither case involved the situation where, as here, there are alternative theories of fraud that could support the conviction. In the Shenker matter, in addition to the honest services fraud, the Superseding Indictment alleges that the defendants conspired to engage in interstate fraud and traditional wire fraud to deprive the WWE of money and property. In Rybicki, the Government did not claim that the victim insurance companies suffered loss or could have suffered loss. Rather, the Government claimed only that there was a scheme to defraud the victim of the intangible right of honest services as defined in 18 U.S.C. § 1346. As the Second Circuit explained, "we have no occasion to consider whether [the defendants] would also have been prosecutable under sections 1341 or 1343,

standing alone." Id. at 128, n.1.

In Handakas, the conspiracy allegation did not involve any employee -- either current or former -- of the New York City School Construction Authority ("SCA"). Here of course, Shenker's conspiracy did involve a WWE employee, James Bell, who was plainly employed by WWE until February 2000 and then continued in a contractual relationship, with attendant obligations, long after. In Handakas, the jury concluded that there was no scheme to defraud the SCA of money or property and thus, the only theory to support the conviction was a scheme to defraud the victim of honest services. Here, as noted, Shenker is also accused of conspiring to defraud the WWE of money and property.

The Government is well aware of the limitations of any honest services theory of liability. The Superseding Indictment properly alleges alternative theories of liability and there simply is no basis pretrial to strike the references to honest services, much less dismiss Count One.

### ii)  Count Five properly alleges an offense.

Shenker suggests that there may be something wrong with Count Five *if* this count charged that Shenker engaged in a scheme to defraud WWE of honest services during the ongoing civil litigation. Because Count Five makes no such claim, (see supra at page 10), Shenker's effort to dismiss this count on that basis fails. In short, there is no basis to dismiss Count Five for the reasons argued by the defendant.

### C.   THE COUNTS ARE PLAINLY NOT BARRED BY THE STATUTE OF LIMITATIONS.

#### I.   The Conspiracy Count (Count One) Falls Well Within the Statutory Limitations Period.

Count One charges one multi-object conspiracy to commit interstate transportation of money obtained by fraud and to commit wire fraud under two separate, albeit related, theories. The conspiracy, as alleged, began in or about January 1998 and continued until in or about March 2003. Superseding Indictment ¶ 11. The Superseding Indictment alleges a series of overt acts of kickback payments spanning from October 8, 1998 through March 28, 2002, as well as overt acts of creating false invoices in 2002, and the defendant repeatedly lying in depositions in May through December 2002. Id. ¶ 27.

Conspiracies are continuing offenses, and thus the statute of limitations runs from the date of the last overt act, here alleged to be December 2002. See Ben Zvi, supra, 242 F.3d at 97 (period of limitations computed from last alleged overt act in wire fraud conspiracy). To the extent that the defendant contests the factual accuracy of the alleged overt acts, that remains a fact question for a jury, not a matter to be decided as a matter of law by this Court. See United States v. Fuchs, 218 F.3d 957, 961 (9th Cir. 2000) (jury should be instructed that it has to find an overt act in furtherance of the conspiracy within the statute of limitations period).

While the defendant's argument is not clear, he appears to argue that the scope of the multi-object conspiracy could not as a matter of law extend after the defendant's coconspirator (James Bell) lost his job in February 2000 or after the date in 2000 of the three interstate kickback payments alleged in Counts Two through Four. The quickest response to dispose of this flawed argument is as follows: the defendant expressly tolled the limitations period after August 3, 2004, as set forth in the November 29, 2004 tolling agreement, and less than five years lapsed between any date in 2000 and August 3, 2004. Thus, there is no limitations bar.

Moreover, the Superseding Indictment alleges multiple overt acts in furtherance of the

16

objects of the conspiracy after 2001, including lying during the course of civil litigation in 2002, fabricating documents that year to perpetuate the scheme, and continuing to make kickback payments until as late as March 2002. Superseding Indictment ¶ 25-27, 28.[10]  These overt acts fall well within the five year statute of limitations, even ignoring the plainly applicable tolling agreement.  To the extent that the defendant seeks to contest the scope of the conspiracy or the overt acts, those are factual issues for a jury, not an issue for a motion to dismiss. See United States v. Sharpe, 193 F.3d 852, 867 (5th Cir. 1999) (scope of conspiracy and membership in it are questions of fact for the jury to decide).

      The defendant tries to draw some significance from the fact that Bell left his employ at WWE in February 2000, as if that somehow undercuts the allegations in the Superseding Indictment which **charge multiple overt acts after February 2000**.  Putting the best spin on the argument, the defendant argues that a conspiracy to deprive WWE of honest services cannot, as a matter of law, extend beyond February 2000.   First, this argument is wrong for the reasons discussed above at pages 12-14.  Second, even if the deprivation of the honest services object of the conspiracy could not extend beyond February 2000 (a point the Government obviously does not concede), the remaining objects of the conspiracy, including wire fraud to deprive WWE of money/property and interstate transportation of monies obtained by fraud plainly continued through March 2002 and beyond.   For the above stated reasons, Count One is timely charged.

            **ii.**      **The Interstate Transportation of Monies Counts (Counts Two through Four) Fall Well Within the Statutory Limitations Period.**

---

    [10]  The defendant ignores the many interstate kickback payments alleged as overt acts in ¶ 28, instead focusing on the dates of the kickback payments alleged in the three substantive counts.  Again, for purposes of the motion to dismiss, the allegations must be taken as true.

Counts Two through Four allege the interstate transportation of money obtained by fraud, with the interstate transportation alleged to have occurred on or about February 22, 2000, June 16, 2000, and September 10, 2000, respectively. For these counts, the five year statute-of-limitations clock runs from the date of the alleged interstate transportation of monies, excluding any time during which the statute was tolled. See United States v. Drebin, 557 F.2d 1316, 1333 (9th Cir. 1977). As discussed at length above, the defendant agreed to toll the statute of limitations from August 3, 2004 until he revoked the tolling/waiver agreement in writing, which he has not yet done. As no time after August 3, 2004 is included in calculating the limitation period, each of Counts Two through Four is well within the five year statute of limitations.

### iii. Count Five (Mail Fraud) Falls Well Within the Five Year Limitations Period.

Count Five, which was first included in the September 7, 2006 Superseding Indictment, focuses on the defendant's scheme to defraud WWE during his civil litigation with WWE through misrepresentations and the creation of fraudulent documents. The mailing that is the jurisdictional requirement for that scheme occurred when the defendant, in furtherance of his scheme, caused his civil counsel to mail falsified documents to opposing counsel in the litigation. The alleged mailing took place on July 16, 2002. Because the five year limitations period runs from the date of the July 2002 mailing, (see United States v. Clevenger, 458 F.Supp. 354, 358 (E.D. TN 1978)), Count Five is not time-barred, even assuming there were no November 29, 2004 Tolling Agreement.

In short, each of the five counts of the Superseding Indictment are within the statute of limitations period. Accordingly, defendant's motion to dismiss each of the counts of the

indictment on statute of limitations grounds must fail.

## Conclusion

For the reasons set forth above, defendant Shenker's motion to dismiss each of the counts of the Superseding Indictment should be denied.

Respectfully submitted,

JOHN H. DURHAM
DEPUTY UNITED STATES ATTORNEY

/S/
RICHARD J. SCHECHTER
SENIOR LITIGATION COUNSEL
Federal Bar No. CT 24238
915 Lafayette Boulevard
Bridgeport, CT 06604
Richard.Schechter@usdoj.gov
(203) 696-3049
(203) 579-5550 (Fax)

/S/
CHRISTOPHER W. SCHMEISSER
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT 14806
157 Church Street, 23d Floor
New Haven, CT 06510
Christopher.Schmeisser@usdoj.gov
(203) 821-3700
(203) 773-5378 (fax)

**CERTIFICATE OF SERVICE**

      A true and correct copy of the foregoing OPPOSITION was forwarded by facsimile and U.S. mail, postage prepaid, to the following counsel on this the 8th day of November, 2006:

Andrew Bowman, Esq.
Counsel for defendant Stanley Shenker
1804 Post Road East
Westport, Connecticut 06880

                                     /S/_____
                                     RICHARD J. SCHECHTER
                                   SENIOR LITIGATION COUNSEL